996 F.2d 1228
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Andrias KARAPETIAN, Defendant-Appellant.
 No. 91-50548.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 21, 1993.*
Decided July 2, 1993.
 
 Before: CANBY, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Andrias Karapetian appeals his conviction following a conditional guilty plea to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Karapetian contends the district court erred by denying his motion to suppress evidence of drugs seized pursuant to a search warrant issued subsequent to a warrantless entry into his residence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We review de novo a district court's denial of a motion to suppress evidence. United States v. Homick, 964 F.2d 899, 902 (9th Cir.1992). The district court's determinations of underlying facts controls unless clearly erroneous. United States v. Lai, 944 F.2d 1434, 1441 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992).
 
 
 4
 * Background
 
 
 5
 The facts in this case are undisputed. On February 26, 1991, a Ventura County, California detective interviewed a confidential informant (CI) who told police that in the past he had obtained narcotics from a drug dealer named Carlos Garavito. The CI told police that Garavito had two residences in Canoga Park, California, one at 7826 Topanga Canyon Boulevard, and one at 7326 Shoup Avenue. The informant also told police that Garavito drove two cars, a black BMW Sedan with no license plates and a green Lincoln Continental with tinted windows.
 
 
 6
 The police initiated surveillance at both of Garavito's residences. At the instruction of the police, the CI negotiated the purchase of three kilograms of cocaine from Garavito. After a series of telephone conversations, the CI arranged to meet Garavito at a designated location in Simi Valley at 7:00 p.m. on February 26, 1991 to pick up the cocaine. Shortly after the final conversation between the CI and Garavito, police saw a man matching Garavito's description leave the 7826 Topanga Canyon address and get into a dark colored BMW with no license plates.
 
 
 7
 The police followed the BMW directly to a garage at the back of 7326 Shoup Avenue, where they observed Garavito meet two other men who were already there. Garavito parked the BMW in the garage and got into a Lincoln Continental parked in the alley near the garage. Garavito drove the Lincoln directly to a residence at 12650 Welby Way in North Hollywood.
 
 
 8
 Garavito parked the car in the driveway and opened the trunk. Garavito stood next to the car and watched traffic as if looking for police surveillance. The surveillance team lost sight of Garavito for a few minutes. When next seen, Garavito had closed the trunk and was backing out of the driveway. He drove directly back to 7326 Shoup Avenue. There, Garavito met and spoke with a woman waiting outside the house. He then went into the house, returned to the Lincoln and drove way. He was arrested en route to the Simi Valley destination.
 
 
 9
 The officers obtained consent to search the vehicle and found three kilograms of cocaine in the trunk. Garavito also consented to the search of his two residences. Several officers returned to the Welby Way address to secure it while others sought a search warrant for all three residences. After knocking on the door, one of the surveillance officers announced at least twice in Spanish, "Police, narcotics investigation, open the door." At this point, officers heard people inside running around. The officers forced the door open and entered the house, at this point identifying themselves in English. They gathered the occupants into one room. The officers then performed a protective sweep. The people in the room were interviewed to determine their identities and if they lived at the house. Those who did not live at the house were allowed to leave. Once Andrias Karapetian and his wife were identified as the owners of the house, the officers sought and were denied consent to search the house. The Karapetians are Armenian immigrants and apparently do not speak Spanish.
 
 II
 Search Warrant
 
 10
 Karapetian contends that there was no probable cause for the search warrant issued for his residence at 12650 Welby Way because the affidavit in support of the search warrant failed to show a nexus between the criminal activity and the Welby Way address. We disagree.
 
 A. Probable Cause
 
 11
 Upon review we must determine whether the issuing magistrate had a substantial basis for concluding that the affidavit in support of the warrant established probable cause. United States v. Ramos, 923 F.2d 1346, 1351 (9th Cir.1991) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)). A determination of probable cause is made based upon whether the officers reasonably believed under the totality of the circumstances known to the officers at the time, that there was a "fair probability" that contraband or evidence of a crime would be found at the location. See Lai, 944 F.2d at 1441. Moreover, in reviewing the magistrate's decision that probable cause existed, we are limited to the information contained in the four corners of the affidavit supporting the application for the search warrant. United States Huguez-Ibarra, 954 F.2d 546, 552 (9th Cir.1992).
 
 
 12
 Here, the surveillance team observed Garavito leave one residence in a BMW, go to his second residence, switch cars and then drive directly to the Welby Way address. He parked in the driveway, got out and opened the trunk. The officer watching him lost sight of him for a few minutes. The officer then observed Garavito closing the trunk and driving away. Garavito was later arrested and cocaine was discovered in the trunk of his car.
 
 
 13
 Based upon the experience and training of the officers and the totality of the circumstances known to them at the time, the officers had probable cause to believe that Garavito had either picked up or delivered cocaine to the 12650 Welby Way address, and that there was a "fair probability" that contraband or evidence of a crime would be found inside. See id. The district court did not err by denying Karapetian's motion to suppress. See id.
 
 AFFIRMED.[1]
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Karapetian also contends that there was no probable cause or exigent circumstances to enter and secure his residence without a warrant, and therefore any evidence obtained was tainted
 We need not address the warrantless entry and taint attenuation issues because all of the evidence offered was obtained pursuant to a valid search warrant or would have been discovered under the inevitable discovery doctrine. See Segura v. United States, 468 U.S. 796, 810 (1984).